**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

—————————————————————— :
                                        :
ERIBERTO GONZALEZ,                      :
                                        :   Civil Action No. 3:07-cv-00902 (FLW)
                                        :
      Plaintiff,                        :
                                        :
      v.                                :
                                        :      **OPINION**
                                        :
BRISTOL-MYERS SQUIBB COMPANY,           :
SANOFI-AVENTIS U.S. L.L.C.,             :
SANOFI-AVENTIS U.S., INC.,              :
SANOFI-SYNTHELABO, INC.,                :
                                        :
      Defendants.                       :
—————————————————————— :

This matter comes before the Court on a motion to dismiss pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure brought by defendants, Bristol Myers-Squibb Company, Sanofi-Aventis U.S., L.L.C., Sanofi-Aventis U.S., Inc., and Sanofi-Synthelabo, Inc., (collectively, "Defendants"). Plaintiff Eriberto Gonzalez' First Amended Complaint asserts claims against Defendants for: (1) defective design (Count I); (2) manufacturing defect (Count II); (3) failure to warn (Count III); (4) negligence (Count IV); (5) negligent misrepresentation (Count V); (6) violations of New York's Consumer Protection from Deceptive Acts and Practices Act (Count VI); and (7) punitive damages (Count VII). Plaintiff alleges that he was injured as a result of Defendants' unlawful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distributing, labeling and sale of the prescription drug Plavix®. Defendants' motion to dismiss is limited to Count V of Plaintiff's Complaint. For the reasons that follow, Defendants' motion to dismiss Count V is granted.

I.      **Procedural History**

On February 26, 2007, Plaintiff, a New York resident, filed a Complaint against Defendants asserting claims under the New Jersey Products Liability Act, N.J.S.A. 2A:58C-1, *et seq.*, the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*, the New Jersey Punitive Damages Act, N.J.S.A. 2A:15-5.9, *et seq.*, the New Jersey Uniform Commercial Code, N.J.S.A. 12A:2-313, and the common law of the State of New Jersey, invoking this Court's diversity jurisdiction.  (Feb. 26, 2007 Complaint ¶¶ 6-8.)  Plaintiff is one of twenty-three individual claimants[1] that lodged separate complaints[2] against Defendants in this district between October 2006 and March 2007, invoking this Court's diversity jurisdiction and asserting similar claims under New Jersey law based upon injuries allegedly suffered as a result of Defendants' alleged negligent and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distributing, labeling and/or the sale of Plavix.  Id.  A brief recitation of the procedural history in the related matters is necessary to a full understanding of the prolonged procedural history in this matter.

In January 2007, prior to the filing of the instant action, Defendants filed motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) in the matters of Hall v. Bristol-Myers Squibb, No. 06-CV-5203 (hereinafter, "Hall"), and Skilstaff v. Bristol-Myers Squibb, No. 06-CV-

---

[1]      Initially, claims were filed on behalf of twenty-four individual claimants, however, a Michigan plaintiff in the matter of Felmlee v. Bristol-Myers Squibb Co., No. 06-6240, voluntarily dismissed her claim in February, 2008.

[2]      A number of the twenty-three claimants were joined in their actions by spouses, asserting claims for loss of consortium.

4965 (hereinafter, "Skilstaff"),[3] and indicated their intention to file similar motions in the other Plavix cases pending before this Court.  In March 2007, this Court, without objection from the parties, administratively terminated Defendants' motions in Hall and Skilstaff having determined that two cases then pending before the New Jersey Supreme Court addressed the central issues to be decided by this Court on Defendants' motions to dismiss. The parties further agreed that all Plavix cases filed in this district be held in abeyance. Following the issuance of the New Jersey Supreme Court's decisions in Rowe v. Hoffman-LaRoche, 189 N.J. 615 (2007), and International Union of Operating Engineers, Local #68 v. Merck, 192 N.J. 372 (2007), the plaintiff in Skilstaff voluntarily dismissed the action and this Court granted Defendants' request to file a single omnibus motion to dismiss applicable to all personal injury Plavix lawsuits then pending in this district.

One of the main issues to be determined by this Court in the omnibus motion was the federal preemption of the plaintiffs' individual state law claims.  In February 2008, however, in light of the fact that the Third Circuit had pending two separate cases, Colacicco v. Apotex, Inc., and McNellis ex rel. DeAngelis v. Pfizer, Inc., on its docket regarding substantially similar preemption issues, as did the United States Supreme Court, Levine v. Wyeth, this Court administratively terminated the personal injury Plavix cases pending in this district and permitted plaintiffs to re-file amended complaints in the event there were viable claims after the decisions from the Higher Courts.  Following the issuance of the Supreme Court's decision in Levine v. Wyeth, __ U.S. __, 129 S.Ct. 1187,

---

[3]     The plaintiff in the matter of Skilstaff v. Bristol-Myers Squibb, is not among the twenty-three individual claimants seeking damages for personal injuries, rather Skilstaff was an Alabama third-party payor seeking certification of a class of third-party payors for violations of the New Jersey Consumer Fraud Act.

173 L.Ed. 2d 51 (2009), this Court reinstated the closed cases and, on May 1, 2009, each of the plaintiffs filed an amended complaint.  In the amended complaints, each individual plaintiff brought claims under the laws of the states in which they reside, rather than New Jersey, as originally plead.  Thereafter, Defendants moved to dismiss certain counts of the amended complaint filed by each individual plaintiff.  It is the Defendants' motion to dismiss Count V with regard to this Plaintiff that this Court now considers.

## II.    Factual Background

The following version of events assumes Plaintiff's allegations in the First Amended Complaint ("FAC") to be true because Defendants move pursuant to Fed. Civ. R. P. 12(b)(6).  The Court will recount only those facts relevant to this Motion.

Sanofi-Aventis U.S., L.L.C., Sanofi-Aventis U.S., Inc., and Sanofi-Synthelabo, Inc. (collectively, the "Sanofi Defendants") partnered with Bristol-Myers Squibb Company ("BMS") to manufacture and market Plavix in the United States.  FAC ¶¶ 2-4.  In April 1997, the Sanofi Defendants and BMS applied for a rare, priority regulatory review by the Food and Drug Administration ("FDA") clearing the way for Defendants to bring Plavix to market in November 1997.  Id. at ¶ 11.  According to Plaintiff, Defendants heavily marketed Plavix directly to consumers through television, magazine, and Internet advertising, falsely touting Plavix "as a 'super-aspirin' that would give a person even greater cardiovascular benefits than a much less expensive, daily aspirin, while being safer and easier on a person's stomach than aspirin."  Id. at ¶ 13.  Plaintiff alleges that Defendants either knew or should have known, based upon their own studies, that not only was Plavix not more efficacious than aspirin in terms of preventing heart attacks and strokes, the risk of suffering a heart attack, stroke, internal bleeding, blood disorder or

4

death far outweighed any benefit from the drug.  Id. at ¶ 14.

As evidence that Defendants were indeed aware of their false and misleading promotion of Plavix, Plaintiff points to a November 1998 letter from the FDA wherein the FDA instructed Defendants to cease promoting Plavix for off-label use in patients undergoing coronary artery stent placement.[4]  Id. at ¶ 18; Certification of Michele A. DiMartino, Esq. ("DiMartino Cert.") at ¶ 4, Ex. C.  Plaintiff also points to the same FDA reprimand wherein Defendants were instructed to cease promoting Plavix at an off-label dose, which was nearly four (4) times that of the recommended dosage.  FAC at ¶ 18; DiMartino Cert. ¶ 4, Ex. C.  In addition to criticizing Defendants for promoting Plavix for unapproved use, the FDA also criticized Defendants for overstating the safety profile of Plavix with respect to its use with other drugs.  Id. at ¶ 19.  In particular, Plaintiff points to the fact that Defendants touted the safety of Plavix when combined with aspirin (known as "dual therapy") when, in fact, its safety had not been established.  Id.  According to Plaintiff, Defendants' claim regarding the safety of dual therapy has now been proven to be untrue in a recent study published in the New England Journal of Medicine in April  2006 entitled Clopidogrel for High Atherothrombotic Risk and Ischemic Stabilization, Management, and Avoidance (the "CHARISMA Study"[5]).  FAC at ¶ 19; DiMartino Cert. at ¶ 3, Ex. B.

As further evidence of Defendants' allegedly false and misleading promotional practices, Plaintiff points to a December 1998 letter from the FDA, wherein the FDA

---

[4]       As discussed more fully infra, the Court will consider the extrinsic documents referenced in the FAC as they were explicitly relied upon by Plaintiff in the FAC.

[5]       The CHARISMA Study derives its name from the Clopidogrel for High Atherothrombotic Risk and Ischemic Stabilization, Management, and Avoidance trial, which was the subject of the article.

5

demanded that Defendants cease the distribution of advertising materials that claimed that Plavix has been proven more effective than aspirin.  FAC at ¶ 20; DiMartino Cert. at ¶ 2, Ex. A.  The FDA criticized Defendants' materials as an overstatement of efficacy, which was unsubstantiated and lacking in fair balance.  Id.  Again in 2001, the FDA ordered Defendants to immediately cease distribution of promotional material that made false or misleading claims about Plavix.  FAC at ¶ 21; DiMartino Cert. at ¶ 5, Ex. D.  Specifically, the FDA noted that the clinical evidence of the efficacy of Plavix is derived from Defendants' study entitled Clopidogrel versus Aspirin in Patients at Risk of Ischemic Events Trial (the "CAPRIE Study").  Id.  Defendants' promotional material depicted a 19.2% relative risk reduction for Plavix versus aspirin, yet the actual findings of the CAPRIE Study were that Plavix was not proven significantly more effective than aspirin.  Id.  Additionally, the FDA again instructed Defendants to cease claiming that the use of Plavix combined with aspirin was safe and effective.  Id.

According to Plaintiff, in addition to misinforming physicians and consumers through false and misleading promotional materials and advertising, Defendants' drug representatives also misinformed physicians regarding the proper types of patients who should be prescribed Plavix, the duration of its proper usage and the applications for which Plavix is safe and FDA approved.  FAC at ¶ 22.  Specifically, Plaintiff points to the fact that the drug representatives have encouraged physicians to prescribe Plavix to a broad population who would receive the same therapeutic benefit from aspirin alone, without the purported risk of death, and to use Plavix for unapproved applications.  Id. at ¶ 23.

Plaintiff alleges that after a nearly eight-year run of misleading physicians and the public regarding the safety and efficacy of Plavix, scientific studies now reveal that Plavix

is in fact dangerous.  Id. at ¶ 25.  Citing a study published in The New England Journal of Medicine in January 2005 entitled Clopidogrel versus Aspirin and Esomeprazole to Prevent Recurrent Ulcer Bleeding (the "Chan Study"), Plaintiff notes the dangers of Plavix. Specifically, Plaintiff contends that the Chan Study demonstrates the fallacy of Defendants' assertions that Plavix is safer and more effective for patients suffering from gastrointestinal intolerance to aspirin.  Id. at ¶ 26.  Plaintiff points out that the Chan Study recommended that prescribing guidelines for Plavix be changed so that patients would not erroneously believe that Plavix is safer on the stomach than aspirin, in light of the Study's findings that recurring stomach bleeding was 8.6% in the Plavix group versus only .7% in the aspirin group.  Id.  Plaintiff additionally points to the Chan Study's finding that an aspirin a day plus esomeprazole (the generic name for an inexpensive over-the-counter proton pump inhibitor such as Prilosec) is far more cost effective than paying for the four-dollar per day Plavix pill, which greatly increases the risk of stomach bleeding.  Id. at ¶ 27.  Finally, citing the CHARISMA Study, Plaintiff contends that Plavix plus aspirin ("dual therapy") is only minimally more effective than aspirin plus placebo at preventing atherothrombotic events, and more significantly, does more harm than good in those patients without peripheral arterial disease or acute coronary syndrome in that it poses a 20% increased risk to the patient of suffering bleeding injuries, heart attacks, stroke and death.  Id. at ¶ 28.

Plaintiff contends that he "was prescribed Plavix, to be taken in combination with aspirin (known as "dual therapy") on or around October 2004 in connection with stent placement.  On or around June 8, 2005, he went to the hospital for a subarachnoid hemorrhage.  Part of a cerebral artery was cauterized to stop the bleeding.  He stayed in

the hospital almost two weeks and continues to have health problems." Id. at ¶ 30.  With regard to his own experiences, or those of his prescribing physician, in connection with Defendants' purported false and misleading promotional materials and practices, Plaintiff's limited discussion of those facts will be discussed more fully infra.

## III.    Standard of Review

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted).  In Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 561 (quoting Conley, 355 U.S. at 45-46).  Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Id. at 555.  As the Third Circuit has stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating … a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

8

In affirming that <u>Twombly</u> standards apply to all motions to dismiss, the Supreme Court recently explained the principles.  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009);  <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009).[6]  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss."  <u>Id.</u> at 1950.  Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the  assumption of truth."  <u>Id.</u> Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts."  <u>Fowler</u>, 578 F.3d at 211.

Before reaching the merits of Plaintiff's claims, there is a threshold procedural question as to the documents and exhibits this Court may consider on this motion to dismiss pursuant to <u>Fed.R.Civ.P.</u> 12(b)(6).  As previously referenced in this Court's discussion of the Factual Background, Plaintiff supplies this Court with several exhibits, including: (1) a December 1998 FDA letter addressed to Sanofi Pharmaceuticals, Inc.; (2) a copy of the CHARISMA Study; (3) a November 1998 FDA letter addressed to Sanofi Pharmaceuticals, Inc.; (4) a May 2001 FDA letter addressed to Sanofi-Synthelabo Inc.; and (5) the Chan Study.  Additionally, the Defendants provide the Court with the November 17, 1997 approval letter for Plavix.  Certification of Michael A. Tanenbaum, Esq., Ex. A.  While generally a court may not consider matters outside the pleadings when ruling on a motion

---

[6]     The Court notes that because the briefing in this matter was filed only shortly after the United States Supreme Court's decision in <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009), counsel for Defendants moved for leave to file supplemental briefing addressing the standard of review applicable to the instant motion.  This Court found additional briefing unnecessary and, accordingly, denied Defendants' request.

to dismiss, documents that are "integral to or explicitly relied upon in the complaint" may indeed be considered without converting a motion to dismiss into a motion for summary judgment.  In re Rockefeller Ctr. Props., Inc. Sec. Litig., 184 F.3d 280, 287 (3d Cir.1999) (emphasis and citations omitted).   Accordingly, the referenced exhibits are properly before the Court on the instant motion to dismiss.

## IV.   Plaintiff's Negligent Misrepresentation Claim

Defendants seek dismissal of Plaintiff's negligent misrepresentation claim on the grounds that it fails to satisfy the pleading requirements of Fed.R.Civ.P. 9(b).   Citing In re LILCO Securities Litigation, 625 F.Supp. 1500, 1504 (E.D.N.Y. 1986) and HSA Residential Mortgage Services of Texas v. Casuccio, 350 F.Supp.2d 352, 368 (2003),  Plaintiff disputes the applicability of Rule 9(b), asserting that New York courts have concluded that claims alleging negligent misrepresentation are not subject to the particularity requirements of Rule 9(b).  Additionally, Plaintiff points to In re Supreme Specialties, Inc. Sec. Litig., 438 F.3d 256 (3d Cir. 2006), arguing that a plaintiff may "carve claims out from the core theory of fraud and avoid the requirements of Rule 9(b)."  Pl. Br. at 7.  Plaintiff further cites to a host of cases from the District of New Jersey wherein courts have found Rule 9(b) inapplicable to negligent misrepresentation claims.

The inapplicability of Rule 9(b) to negligent misrepresentation claims brought under New York law is not as settled as Plaintiff suggests.  Indeed, in Federal National Mortgage Association v. Olympia Mortgage Corporation, No. 04-4971, 2006 U.S. Dist. LEXIS 70175 at * 199-20 (E.D.N.Y. Sep. 28, 2006), the very case cited by Plaintiff in support of the elements of his claim, the court acknowledged

> Rule 9(b) may or may not apply to a state law claim for negligent misrepresentation."  Eternity Global Master Fund Ltd. v. Morgan

<u>Guaranty Trust Co. of New York</u>, 375 F.3d 168, 188 (2d Cir. 2004). The Court of appeals for the Second Circuit has never reached the issue and district courts in the circuit are split.  See <u>id</u>; *compare* <u>HSA Residential Mortgage Services of Texas v. Casuccio</u>, 350 F.Supp.2d 352, 368 (E.D.N.Y. 2003) ("The heightened pleading requirements of Rule 9(b) are not required.") and <u>In re LILCO Securities Litigation</u>, 625 F.Supp. 1500, 1504 (E.D.N.Y. 1986) ("Negligent misrepresentation is not a claim that necessitates the particularized pleading of Rule 9(b)." with <u>Northwestern Mutual Life Ins. Co. v. Banc of America Securities LLC</u>, 254 F.Supp.2d 390, 400 (S.D.N.Y. 2003) ("A common law claim for negligent misrepresentation must satisfy the requirements of Fed.R.Civ.P. 9(b).") and <u>Simon v. Castello</u>, 172 F.R.D. 103, 105 (S.D.N.Y. 1997) ("The particularity requirements of Rule 9(b) have also been found to apply to claims for negligent misrepresentation.").

See also <u>Icebox-Scoops, Inc. v. Finanz St. Honore, B.V.</u>, No. 07-0544, 2009 WL 3838276, *4 (Nov. 16, 2009) (noting that "[c]laims of negligent misrepresentation must . . . be pled with particularity if based on the same set of facts as intentional fraud claims.")

The Court need not resolve the issue here, however, because even under the more lenient standards of Rule 8(a), Plaintiff's negligent misrepresentation claim cannot withstand the instant motion to dismiss.  "Under New York law, the elements of a negligent misrepresentation claim are that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment."  <u>Federal National Mortgage Association v. Olympia Mortgage Corporation</u>, 2006 U.S. Dist. LEXIS 70175 at * 199-20.  Plaintiff has failed to plead anything other than bald conclusory allegations in support of the foregoing elements of his negligent misrepresentation claim.

11

Last year, addressing the clarifications as to a litigant's pleading requirement stated by the United States Supreme Court in <u>Twombly</u>, 550 U.S. 544, the Court of Appeals for the Third Circuit provided the district courts with guidance as to what pleadings are sufficient to pass muster under Rule 8.  See <u>Phillips v. County of Allegheny</u>, 515 F.3d at 230-34.  Specifically, the Third Circuit, quoting <u>Twombly</u>, observed as follows:

> "[W]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's [Rule 8] obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." . . . "[T]he threshold requirement of Rule 8(a)(2) [is] that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'" . . . "Factual allegations must be enough to raise a right to relief above the speculative level."

<u>Phillips</u> 515 F.3d at 231-32 (quoting <u>Twombly</u> 550 U.S. at 555).  As previously noted, this pleading standard was further refined by the United States Supreme Court in <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1949 wherein the Supreme Court held that in all civil actions:

> [T]he pleading standard Rule 8 announces . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"
>
>        . . . .
>
>        Two working principles underlie [the] decision in <u>Twombly</u>. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific

12

> task that requires the reviewing court to draw on its judicial experience
> and common sense.  But where the well-pleaded facts do not permit the
> court to infer more than the mere possibility of misconduct, the
> complaint has alleged - but it has not "show[n]" - "that the pleader is
> entitled to relief."  Fed. Rule Civ. Proc. 8(a)(2).
>
>            . . . .
>
>       Rule 8 does not empower [a claimant] to plead the bare elements
> of his cause of action, affix the label "general allegation," and expect his
> complaint to survive a motion to dismiss.

Iqbal, 129 S.Ct. at 1949-54 (quoting Twombly 550 U.S. at 555-57).  Since Iqbal, the Third

Circuit has required the district courts to conduct, with regard to Rule 8 allegations, a

two-part analysis when presented with a motion to dismiss:

>       First, the factual and legal elements of a claim should be separated. The
> District Court must accept all of the complaint's well-pleaded facts as true,
> but may disregard any legal conclusions. [See Iqbal, 129 S.Ct. at 1949-50].
> Second, a District Court must then determine whether the facts alleged
> in the complaint are sufficient to show that the plaintiff has a "plausible
> claim for relief" [in light of the definition of "plausibility" provided in
> Iqbal.]   In other words, a complaint must do *more than allege the
> plaintiff's entitlement to relief.*  A complaint has to "show" such an
> entitlement with its facts. See Phillips, 515 F.3d at 234-35.  As the
> Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not
> permit the court to infer more than the *mere possibility of misconduct, the
> complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled
> to relief.'"* Iqbal, 129 S.Ct. at 1949-50.  This "plausibility" determination
> will be "a context-specific task that *requires the reviewing court to draw on
> its judicial experience and common sense."* Id.

Fowler, 578 F.3d at 210-11 (emphasis supplied).

       The only factual allegations in the FAC that provide details with regard to this Plaintiff

are those in Paragraph 30, none of which address any of the factual allegations necessary to

sustain his negligent misrepresentation claim.  Turning to Count V of the FAC, it is clear that

Plaintiff's claim is deficient. Even if the Court were to accept Plaintiff's contention that he has sufficiently plead as to elements one through four, a contention that this Court finds doubtful, it is abundantly clear that Plaintiff has failed to allege sufficient facts to support the fifth element of his claim -- that he reasonably relied on Defendants' false representations to his detriment. Indeed, in support of his contention that he has satisfied this element, Plaintiff points to Paragraph 88 of the FAC wherein he states

> 88. Defendants' misrepresentations were made to Plaintiff, as well as the general public. Plaintiff and Plaintiff's healthcare provider justifiably relied and acted upon Defendants' misrepresentations and consequently, Plaintiff's ingestion of Plavix was to Plaintiff's detriment.

It is not enough for Plaintiff to set forth a formulaic recitation of the element without any factual support. Plaintiff's allegation is clearly insufficient under the standard set forth in Iqbal. The FAC lacks any allegations regarding which misrepresentations were made to Plaintiff or his prescribing physician, and what was relied upon in connection with his decision to take Plavix and his physician's decision to prescribe the drug. In the absence of such information, Plaintiff's allegations regarding reasonable reliance amount to nothing more than mere legal conclusion and do not state a plausible claim upon which relief may be granted. See Iqbal, 129 S.Ct. at 1949. Accordingly, Plaintiff's negligent misrepresentation claim cannot withstand the instant motion to dismiss.

## V.    Conclusion

For the foregoing reasons, Defendants' motion to dismiss Counts V of Plaintiff's FAC is granted and Plaintiff's negligent misrepresentation is dismissed without prejudice. Plaintiff shall have leave to file a motion to amend the FAC if he seeks to assert such claim, but he must cure the deficiencies as outlined by the Court.

Dated: December 30, 2009

                                                 ____ /s/ Freda L. Wolfson____
                                                 United States District Judge